STEPHEN R. HARRIS, ESQ.
Nevada Bar No. 001463
HARRIS LAW PRACTICE LLC
6151 Lakeside Drive, Suite 2100
Reno, NV 89511
Telephone: (775) 786-7600
E-Mail: steve@harrislawreno.com
Attorney for Debtor

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEVADA

* * * * *

| | |
|---|---|
| IN RE: | Case No. 19-51486-btb |
| | (Chapter 11) |
| ESSEX REAL ESTATE PARTNERS, LLC, | |
| | Hearing Date:   TBD |
| Debtor, | Hearing Time:   TBD |
| | Estimated Time: 30-45 minutes |
| _____/ | Set By:         Calendar Clerk |

**DEBTOR'S DISCLOSURE STATEMENT**

Dated:      March 25, 2020

Filed by:   STEPHEN R. HARRIS, ESQ.
            HARRIS LAW PRACTICE LLC
            6151 Lakeside Drive, Suite 2100
            Reno, Nevada 89511
            Telephone: (775) 786-7600

            Attorney for Debtor ESSEX REAL ESTATE PARTNERS, LLC,
            a Nevada limited liability company

## I. INTRODUCTION

ESSEX REAL ESTATE PARTNERS, LLC, a Nevada limited liability company, Debtor and Debtor-in-Possession ("Debtor" or "Essex") in the above-captioned Chapter 11 case, provides herein the information contained in this DEBTOR'S DISCLOSURE STATEMENT ("DISCLOSURE STATEMENT") to all known creditors and other parties in interest of the Debtor in order to disclose that information deemed material, important, and necessary to its creditors to arrive at a reasonably informed decision in exercising their rights to vote for acceptance of the Debtor's Plan of Reorganization.

Together with this DEBTOR'S DISCLOSURE STATEMENT, each creditor should also have received a copy of DEBTOR'S PLAN OF REORGANIZATION ("PLAN"), a form Ballot on which creditors and other parties in interest who are entitled to vote may cast their respective vote, and a copy of the ORDER APPROVING DEBTOR'S DISCLOSURE STATEMENT which indicates that the Bankruptcy Court has approved this DEBTOR'S DISCLOSURE STATEMENT for circulation to creditors, in that it contains information of a kind and of sufficient detail, as far as its reasonably practicable, to enable creditors and other parties in interest to make an informed decision about the PLAN. As indicated in the Instructions accompanying the Ballot, which is the form on which you may cast your vote to accept or reject the PLAN, the Ballot must be mailed to Debtor's counsel in time to insure that your Ballot will be received by the due date. Ballots received after the due date may not be counted.

You are urged to carefully read this DEBTOR'S DISCLOSURE STATEMENT and the DEBTOR'S PLAN OF REORGANIZATION before deciding to accept or reject the PLAN. Particular attention should be directed to the provisions of the PLAN affecting your rights as well as the Liquidation Analysis which describes the results which would be obtained in the event the Debtor's business is discontinued and its assets liquidated.

## II. THE CHAPTER 11 CONFIRMATION PROCESS

The Chapter 11 confirmation process is governed, in large part, by the Bankruptcy Code. Under the Bankruptcy Code, to be confirmed the DEBTOR'S PLAN OF REORGANIZATION must be accepted by at least one (1) Class of Creditors consisting of non-insiders whose claims

against the Debtor will be "impaired" under the PLAN. Claimants who are scheduled to receive full payment on their Claims without modification or changes to their right to payment are unimpaired and deemed to have accepted the PLAN and do not vote. Only Creditors whose Claims are "impaired" in that their right to payment terms is modified or changed are entitled to vote in favor of accepting or rejecting the PLAN. A Class of claims is "impaired" if the amount to be paid to the Class provides the Claimants in that Class with less than full payment of the Allowed Claims in that Class or the terms for repayment are extended beyond the contractual due date or some other contractual terms are changed. Acceptance by such Class requires more than one-half of the Creditors in the Class who cast accepting votes on the PLAN, and hold at least two-thirds of the total dollar amount of the Claims in that Class casting accepting votes on the PLAN.

## III. DISCLAIMER

NO REPRESENTATIONS CONCERNING THE DEBTOR, ITS FUTURE BUSINESS OPERATIONS OR VALUE OF PROPERTY, ARE AUTHORIZED BY THE DEBTOR, OTHER THAN AS SET FORTH IN THIS STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE ACCEPTANCE OF THE PLAN OF REORGANIZATION WHICH ARE NOT CONTAINED HEREIN OR IN THE PLAN OF REORGANIZATION SHOULD NOT BE RELIED ON BY ANY CREDITOR OR OTHER PARTY IN INTEREST. ALTHOUGH THE FINANCIAL INFORMATION CONTAINED HEREIN IS BELIEVED TO BE ACCURATE, IT HAS NOT BEEN SUBJECTED TO ANY CERTIFIED AUDIT AND IS NOT WARRANTED OR REPRESENTED TO BE ERROR FREE.

## IV. DEBTOR'S FINANCIAL HISTORY

ESSEX REAL ESTATE PARTNERS, LLC, a Nevada limited liability company, was formed in November 2007 for the purpose of purchasing, completing the entitlements and selling five (5) parcels of unimproved real property, totaling 83.38 acres, located in Henderson, Clark County, Nevada, identified as APNs: 191-15-811-001; 191-15-711-022; 191-23-211-003; 191-23-211-004; and 191-14-311-002 (collectively the "Property").

HARRIS LAW PRACTICE LLC
6151 Lakeside Drive
Suite 2100
Reno, NV 89511
775 786 7600

3

On November 29, 2007, Essex borrowed the total principal sum of Sixty-Six Million Dollars ($66,000,000) under a Term Loan Agreement dated November 29, 2007, and a Deed of Trust Note in the amount of $42,900,000 (the "Foothill Note") payable to The Foothill Group, Inc. and a Deed of Trust Note in the principal amount of $23,100,000 (the "IFA Note") payable to Integrated Financial Associates, Inc. ("IFA") (the Foothill Note and IFA Note are collectively referred to as the "Notes"). NexBank, SSB ("NexBank"), was and is the duly appointed collateral agent and administrative agent for the lenders under the Notes and the Term Loan Agreement.

Concurrent with execution of the Notes and the Term Loan Agreement, Essex executed a Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing ("Deed of Trust"), for the purpose of securing the obligations under the Notes and Term Loan Agreement. The Deed of Trust was recorded on December 4, 2007, in the Official Records of the Clark County Recorder as Inst.# 20071204-0001853, thus encumbering Essex's Property at the time of recordation.

The purpose of the Loan was to finance the purchase and development of the Property based on a Development Agreement dated November 29, 2007, between Essex and KB Home Nevada, Inc. The entire principal and accrued interest owing under the Notes and Term Loan Agreement was due and payable by Essex on the initial Maturity Date of December 1, 2008. Essex had the option to exercise a six month first extension of the initial Maturity Date under the Notes and Loan Agreement to June 1, 2009 (the "First Extended Maturity Date"), under certain conditions. Essex had the option to exercise an additional six month second extension of the initial Maturity Date under the Notes and Loan Agreement to December 1, 2009 (the "Second Extended Maturity Date"), under certain conditions. Essex did not exercise the First Extended Maturity Date or the Second Extended Maturity Date.

As a result of the Great Financial Recession that commenced in 2008 and the subsequent breach of the Development Agreement by KB Home Nevada, Inc., the principal and accrued interest under the Notes and the Term Loan Agreement was not timely paid by Essex on or before the Maturity Date of December 1, 2008.

On June 6, 2016, pursuant to N.R.S. § 361.570, the Ex Officio Tax Receiver for Clark

County prepared a certificate for each parcel of the Property on which delinquent taxes had not been paid, authorizing the Clark County Treasurer to hold each parcel of the property described in the certificates for a period of two (2) years unless sooner redeemed by payment of the taxes and accruing taxes, penalties and costs, together with interest on the taxes at the rate of 10 percent (10%) per annum from the date due until paid.

Because neither Essex, NexBank, IFA or any of the lenders redeemed the Property by paying all past due taxes, on July 2, 2018, Tax Trustee Deeds with respect to each parcel of the Property were recorded by the Clark County Treasurer in the records of the Clark County Recorder as Instrument Numbers 20180702-0000741, 20180702-0000742, 20180702-0000743, 20180702-0000744 and 20180702-0000745.

The effect of the Tax Trustee Deeds is that title to the Property is held in trust by the Clark County Treasurer with Essex as the owner of said Property, until such time as the Property is sold at a public sale or otherwise conveyed pursuant to N.R.S. § 361.595. Pursuant to N.R.S. §§ 361.585(3) and (4), the Property may be reconveyed out of trust from the Clark County Treasurer to the legal owner, Essex, upon payment equal to all taxes accrued, together with any costs, penalties and interest legally chargeable against the Property.

George Holman, Jr. ("Holman"), individually owns a .67033% interest in Essex. Holman had also personally guaranteed the Notes and Term Loan Agreement pursuant to a Guaranty Agreement. Accordingly, on October 30, 2013, Holman filed his Voluntary Petition for Chapter 7 relief in this Bankruptcy Court, as Case No. 13-52092-btb. Holman's ownership interest in Essex was not listed on Schedule B in his Chapter 7 case, although it was disclosed to the Trustee. On July 3, 2014, an Order Discharging Debtor was entered in Holman's Chapter 7 case, at which time his personal liability under the Guaranty Agreement was discharged pursuant to 11 U.S.C. §727. On January 27, 2016, a Final Decree, Discharge of Trustee and Closing of Chapter 7 Case was entered in Holman's Chapter 7 case.

On March 13, 2019, the United States Trustee filed her Ex Parte Motion to Reopen Chapter 7 Case in Holman's Chapter 7 case, for the purpose of administering Holman's ownership interest in Essex. On March 18, 2019, Jeri Coppa-Knudson ("Trustee") was once again appointed

HARRIS LAW PRACTICE LLC
6151 Lakeside Drive
Suite 2100
Reno, NV 89511
775 786 7600

as Trustee of Holman's re-opened Chapter 7 case.

In the course of carrying out her duties in Holman's re-opened Chapter 7 case, the Trustee and her counsel became aware that more than ten (10) years had elapsed since the Notes and the Term Loan Agreement became wholly due and payable on December 1, 2008. Based on the Ancient Mortgage Statute provisions of N.R.S. § 106.240, as of December 2, 2018, the Notes, the Term Loan Agreement and the Deed of Trust are conclusively presumed to be satisfied and the lien discharged. Because of the Ancient Mortgage Statute, Essex's Property is no longer encumbered by an enforceable Deed of Trust and there exists significant equity in the Property, even after payment of the real property taxes owing to the Clark County Treasurer. Accordingly, Essex filed its Chapter 11 Voluntary Petition on December 27, 2019, in order to protect and preserve the Property for the benefit of Essex's allowed creditors and equity holders.

## V. DESCRIPTION AND VALUATION OF ASSETS

The Debtor's assets which existed on the Petition Date, are generally described as follows:

| Description | Est. Market Value |
|---|---|
| 5 parcels of unimproved real property (totaling 83.38 acres) located in Henderson, NV Identified as APNs: 191-15-811-001; 191-15-711-022; 191-23-211-003; 191-23-211-004; and 191-14-311-002 | $50,000,000 +/- |

The Debtor is a single asset real estate case as that term is defined in 11 U.S.C. §101(51B).

## VI. SIGNIFICANT POST-PETITION EVENTS

The following significant events have occurred post-petition:

The Debtor filed an Application (DE 12) seeking to employ Harris Law Practice LLC, as its general bankruptcy counsel, with a hearing on the currently scheduled for April 28, 2020, at 2:00 p.m.. Debtor also filed an Ex Parte Application (DE 51) to employ Michael Stuart of Colliers International as its exclusive broker to market and sell its Property, and an Ex Parte Order (DE 53) approving the Ex Parte Application was entered on March 3, 2020.

Additionally, on January 28, 2020, the Debtor filed an adversary Complaint (Adv. DE 1[1]) against Integrated Financial Associates, Inc. a Nevada corporation ("IFA") and NexBank, SSB, a Texas chartered state savings bank ("NexBank"), alleging the following claims for relief: (1) Quiet Title (N.R.S. § 40.010); (2) Wrongful Disparagement/ Slander of Title; (3) Extent, Priority and Validity of Liens; (4) Cancellation of Instrument; (5) Objection to Proof of Claim (11 U.S.C. § 502(a)); and (6) Request for Attorney Fees. On February 28, 2020, the Debtor filed its Plaintiff's Motion for Summary Judgment (Adv. DE 15) ("MSJ") seeking summary judgment against IFA and NexBank on all claims in the Complaint. A hearing on the MSJ is currently scheduled for May 14, 2020, at 10:00 a.m., but the Debtor, IFA and NexBank have agreed to attend a Settlement Conference with the Honorable Gregg W. Zive on April 14, 2020, in an attempt to resolve the parties' disputes.

Due to the recent COVID-19 pandemic and the closure of all non-essential businesses in Nevada, the Debtor decided to suspend its marketing efforts for the sale of its Property for approximately thirty (30) days. The Debtor will continue to assess the situation with its broker and adjust the timeline as needed.

## VII. ADMINISTRATIVE AND UNCLASSIFIED CLAIMS

### ADMINISTRATIVE CLAIMS:

All costs and expenses of administration in this case, including any actual and necessary expenses of preserving or liquidating the assets of the Debtor's estate, all allowances, including professional fees and costs, approved by the Court, and any other costs and expenses entitled to priority pursuant to 11 U.S.C. § 507(a)(1) of the Bankruptcy Code and 28 U.S.C. § 1930, shall be paid in full on or before the Effective Date of the Plan., unless otherwise agreed to in writing by the parties. The holders of these claims include the attorneys and accountants for the Debtor, unpaid post-petition accounts payable (if any), and all fees to be paid to the Office of the United States Trustee. The estimated administrative expenses projected for the Debtor's reorganization proceeding range from $1,200,000 to $1,500,000, and consist of the following:

$0.00         Trustees fees that are owed the U.S. Trustee's Office for the

---

[1] "Adv. DE" refers to this Court's docket number in Adv. Case No. 20-05001-btb.

HARRIS LAW PRACTICE LLC
6151 Lakeside Drive
Suite 2100
Reno, NV 89511
775 786 7600

| | |
|---|---|
| | applicable quarters of 2019/2020 prior the Confirmation Date [payment is anticipated to be made when due]; |
| $1,200,000 – $1,500,000 | Estimated unpaid professional fees and expenses for the Debtor's general bankruptcy attorney, Stephen R. Harris, Esq., of HARRIS LAW PRACTICE LLC, calculated as of the Confirmation Date (Debtor's counsel is seeking to be employed on a contingency basis, wherein it will be paid a percentage of the proceeds of the sale of the Property although the payment will be made by the Debtor's largest equity holders, Royal Essex, LLC). Based on a $40,000,000 gross sales price, the contingency fee would be $1,200,000, and at a $50,000,000 gross sales price, the contingent fee would be $1,500,000, based on 3% of the gross sales price. |
| $0.00 | Post-petition accounts payable with [all post-petition administrative expenses are expected to be paid in full in the normal course of business prior to the Confirmation Date]. |

Professional fees, both legal and accounting, shall continue to accrue up through and subsequent to the Confirmation Date, with final amounts owing subject to Court approval.

<u>UNCLASSIFIED UNSECURED PRIORITY CLAIMS</u>:

1. <u>Description</u>. The Debtor's unsecured priority claims are as follows:

| Name | Scheduled Amount | Proof of Claim Amount | Allowed Priority Amount |
|---|---|---|---|
| Internal Revenue Service | 0.00 | 600.00 | 0.00 |
| **Total:** | 0.00 | 600.00 | 0.00 |

Pursuant to the Debtor's Plan, the treatment and disposition of the unclassified priority claims, will be as follows: Any claim discrepancy will be resolved by the claim objection process, with the stipulated amount and/or Court decreed amount owing used to calculate that particular creditors' allowed claim being paid by the Debtor. All unclassified unsecured priority creditors, shall be paid 100% of their allowed claim amount, with statutory interest thereon, over a one (1) year time period commencing on the Effective Date of the Plan. The payments shall be made monthly, equally amortized over twelve (12) months, with statutory interest accrued thereon, but without any penalties. At the option of the Debtor, any allowed unsecured priority claims may be paid on a shortened time schedule from the one (1) year described hereinabove. In the event the

Debtor fails to make the payments as set forth hereinabove, the allowed general priority creditors, if any, shall have the right to proceed with any administrative remedies available to them, fifteen (15) days after written notice of default has been given to the Debtor and its attorney, Stephen R. Harris, Esq.

### VIII. CLASSIFICATION OF CLAIMS AND INTERESTS

Pursuant to Section 1122 of the Bankruptcy Code, claims against the estate have been divided into the following classifications for purposes of administration and voting on the Plan:

1. CLASS 1 SECURED CLAIM [CLARK COUNTY TREASURER]: This Class consists of the secured claim of the CLARK COUNTY TREASURER in the approximate unpaid principal sum of $2,597,004.72, plus accruing interest at the statutory rate, calculated as of the Petition Date. The Class 1 secured claim of the Clark County Treasurer is secured by a statutory lien recorded against the Debtor's Property.

2. CLASS 2 CLAIM [DISPUTED CLAIM OF NEXBANK, SSB AND IFA]: This Class consists of the disputed claims of NexBank, SSB, IFA and any purported assignees, arising from the Notes, Term Loan Agreement and Deed of Trust recorded against the Debtor's Real Property. NexBank, SSB, as administrative and collateral agent for the Lenders, filed a Proof of Claim (Claim No. 1) on January 6, 2020, in this bankruptcy case alleging that the sum of $584,462,133.58 is due and owing by Debtor. As stated in the Debtor's Complaint and MSJ, the Debtor alleges that it does not owe anything under the Notes, Term Loan Agreement and Deed of Trust by operation of the Ancient Mortgage Statute.

3. CLASS 3 [EQUITY INTERESTS OF DEBTOR]: This Class consists of the members' equity interests in ESSEX REAL ESTATE PARTNERS, LLC, as identified in the List of Equity Security Holders filed with the Voluntary Petition (Docket No. 1) and detailed as follows:

| Member Name | Percentage Interest | Kind of Interest |
|---|---|---|
| Anthony & Linda Pusateri | .0333% | Member |
| Azteca Real Estate Partners, LLC | 14.040000% | Member |

| | | |
|---|---|---|
| DJIP, LLC | .375000% | Member |
| Furthest South, LLC | 14.040000% | Member |
| George Holman Bankrupt Estate | .67033% | Member |
| Inspirada Investment Group LLC | .83300% | Member |
| Learma, Inc. | .041604% | Member |
| Marvin & Marsha Trimas Trust UA | .167000% | Member |
| Resource Investors Capital Holdings, LLC | .83300% | Member |
| Royal Union Trust, Successor-in-Interest to Robert & Breese Glennon | .250000% | Member |
| Robert & Judy Johnston | .50000% | Member |
| Ronald J. Fadel | .08330% | Member |
| Royal Essex LLC | 65.517900% | Member |
| Royal Union Trust, Successor-in-Interest to Valner & Dawn Johnson | .333000% | Member |
| Royal Union Trust, Successor-in-Interest to Two Musketeers Trust | 1.958000% | Member |
| Tenrab Limited Partnership | .400000% | Member |

## IX. TREATMENT OF CLASSES

1. <u>CLASS 1 SECURED CLAIM [CLARK COUNTY TREASURER]</u>: The Class 1 Secured Claim of the Clark County Treasurer shall retain its existing security interest consisting of a statutory tax lien recorded against the Debtor's Property. The Class 1 secured claim shall accrue interest at the statutory rate from the Petition Date until paid in full, and the entire principal balance and unpaid accrued interest shall be all due and payable in eighteen (18) months from the Effective Date of the Plan, upon sale or refinance of the Property. Accordingly, the Class 1 secured claim of the Clark County Treasurer is <u>impaired</u> under the PLAN.

2. <u>CLASS 2 CLAIMS [DISPUTED CLAIM OF NEXBANK, SSB AND IFA]</u>: The disputed Class 2 claim(s) shall not be paid until an allowed claim is mutually agreed upon or adjudicated by the Court through the pending adversary proceeding. In the event any claim is allowed for Class 2, the claim shall be paid pursuant to the parties' agreement to be determined at a later date. Accordingly, the Class 2 Disputed Claims are <u>impaired</u> under the Plan.

3.  CLASS 3 [EQUITY INTERESTS OF DEBTOR]:  The equity interests of the members of ESSEX REAL ESTATE PARTNERS, LLC existing on the Petition Date shall remain unchanged and unaltered.  Accordingly, the Class 3 equity interests of the Debtor are <u>unimpaired</u> under the Plan.

### X. BAR DATE FOR FILING CLAIM

The bar date for filing a proof of claim in this case is May 4, 2020, for all creditors (except a governmental unit), whose claims are disputed or contingent or unliquidated by the Debtor.  The bar date for objecting to claims will be sixty (60) days after the date on which the PLAN is confirmed by order of the Court.  All unsecured priority and general unsecured claims which are listed as disputed in the PLAN or who believe that the amounts listed in the PLAN are incorrect, shall file proofs of claim in this case by the bar date as set forth above.  Failure to file a proof of claim by a disputed claimant or a claimant who disagrees with the amount listed in the PLAN within such time period will result in the amount listed in the PLAN being established as the amount owing to such creditor, and such creditor will participate in the PLAN based upon its claim amount listed in the PLAN.

### XI. MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

**1.    Sale or Refinance**

The Debtor shall fund the proposed Plan payments through proceeds from a refinance, joint venture agreement or sale of the Property. Debtor's representatives are currently negotiating a sale of the Property, subject to Court approval, after notice and hearing.

**2.    Equity Ownership Continued Contributions**

From the Petition Date through the date that the Debtor's Property is sold or refinanced, Royal Essex, LLC shall fund any ongoing administrative and operational expenses of the Debtor, including but not limited to insurance premiums and United States Trustee's quarterly fees.

**3.    Post-Confirmation Default**

In the event the Debtor becomes delinquent in any duty or obligation under the Plan, the affected creditor or creditors may provide written notice of such default to the Debtor and its counsel.  The Debtor shall thereafter have fifteen (15) business days from receipt of said notice

in which to cure the default. In the event such default remains uncured, the affected creditor or creditors shall be entitled to foreclose upon any collateral (if a secured creditor) or take other appropriate action. The Debtor shall have the right to bring the issue of default before the Bankruptcy Court. At any hearing, the Bankruptcy Court may consider the reason for the default and the ability of the Debtor to cure the default in a reasonable period of time. The Bankruptcy Court may also consider conversion of the case to a Chapter 7 of the Bankruptcy Code or dismissal of the same is in the best interest of creditors.

### 4. Professionals' Fees

After the Confirmation Date of the Plan, the Debtor and any other professional, such as Debtor's general bankruptcy counsel, any special purpose counsel or accountants, will not be required to apply to the Court for compensation for services rendered post-confirmation. Post-confirmation compensation of the Debtor's professionals shall be at their normal agreed upon rate(s) and customary cost charges.

### 5. Distribution

All cash proceeds shall be distributed in the foregoing manner except amounts necessary to pay disputed claims against the Debtor in the event they are allowed, which shall be held as a reserve and paid as such claims are determined by agreement between the parties or as are judicially determined.

### 6. Taxes

Unless otherwise provided in the Plan, all taxes are paid current and there are tax liens recorded against the real property owned by the Debtor.

### XII. PROVISIONS GOVERNING DISTRIBUTION AND DISCHARGE

1.   THE DISBURSING AGENT.

ESSEX REAL ESTATE PARTNERS, LLC, in its capacity as Debtor and Debtor-in-Possession, is ultimately responsible for making all distributions pursuant to the Plan. To assist it in discharging those responsibilities, Debtor shall select a depository institution authorized by the Court for all funds which are to be sequestered for claims of creditors and ultimately distributed to creditors holding allowed claims.

2. UNCLAIMED DISTRIBUTIONS.

Any property to be distributed pursuant to the Plan, if not claimed by the distributee within one (1) year after the payment, shall be returned to the Debtor.

3. EFFECT OF CONFIRMATION.

Upon confirmation and performance of the Plan, ESSEX REAL ESTATE PARTNERS, LLC, shall be discharged from any debt that arose before the date of Confirmation, and any debt of a kind specified in §§ 502(g), 502(h), or 502(I) of the Bankruptcy Code, to the full extent permitted by Bankruptcy Code § 1141(d). In addition, pending execution of the Plan, and unless the Court has otherwise expressly ordered or the Plan otherwise expressly provides, all creditors and parties in interest shall be stayed from proceeding against the assets of ESSEX REAL ESTATE PARTNERS, LLC, including stay of default proceedings.

4. EXCULPATION.

Neither the Unsecured Creditors' Committee, if any, nor Debtor nor any of their respective members, officers, directors, employees, representatives, professionals or agents, will have or incur any liability to any Creditor for any act or omission in connection with or arising out of the Reorganization Case, including, without limitation, prosecuting confirmation of this Plan, consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for gross negligence, willful misconduct or fraud or breach of fiduciary duty.

### XIII. POST-CONFIRMATION INJUNCTION

No entity may commence or continue any action or proceeding, or perform any act to interfere with the implementation and consummation of the PLAN and the payments to be made thereunder; or (ii) assert any claim, counter-claim, cross-claim, affirmative defense, defense, set off, recoupment or any action of any kind or nature (collectively "Potential Actions") against Debtor, or any of its successors or assigns.

Confirmation of the PLAN shall constitute a permanent injunction against and irrevocable release of any and all Potential Actions.

## XIV. EXECUTORY CONTRACTS and LEASES

Reservation of Rights. The Debtor reserves the right to assume or reject, pursuant to §365 of the Code, any executory contract or unexpired lease not assumed or rejected prior to the Confirmation Date. All executory contracts and unexpired leases not specifically assumed or rejected as of the Confirmation Date or as to which an application to reject shall not be pending on the Confirmation Date shall be deemed rejected by the Debtor. Debtor hereby assumes or rejects its leases and executory contracts as set forth below:

| Lessor/Obligees Name | Description of Lease/Contract | Assume/Reject |
|---|---|---|
| None | | |

## XV. MISCELLANEOUS PROVISIONS

Notice. Any notice described in or required by the terms of the PLAN or the Code and Rules shall be deemed to have been properly given when actually received or if mailed, five days after the date of mailing, if such shall have been sent by certified mail, return receipt requested, and if sent to:

The Debtor, addressed to:
STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE LLC
6151 Lakeside Drive, Suite 2100
Reno, NV 89511

Headings. the headings used herein are inserted for convenience only and neither constitute a portion of the PLAN nor in any manner affect the construction of the provisions of the PLAN.

Severability. Should any provision of the Plan be determined to be unenforceable following the Effective date, such determination shall in no way limit or affect the enforceability of any and all other provisions of the Plan.

Governing Law. Except to the extent that the Code or other applicable federal law is applicable, the rights, duties and obligations arising under the Plan shall be governed by and construed in accordance with the laws of the State of Nevada.

Successors and Assigns. The rights, duties and obligations of any Person named or

referred to in the Plan shall be binding upon and shall inure to the benefit of the successors and assigns of such person.

<u>Designation of Managers</u>. Jeri Knudson, Manager of the Debtor, shall continue to serve as the Manager of the Debtor and shall be compensated for her services, as may be agreed to by Royal Essex and Jeri Knudson.

## XVI. PROCEDURES FOR RESOLVING CONTESTED CLAIMS

<u>Claims Objections</u>. Objections to Claims shall be filed with the Court and served upon each holder of a Claim to which objection is made no later than sixty (60) days after the Confirmation Date.

<u>Payment Procedures</u>. Payments to the holder of a Claim to which objection has been made that ultimately becomes an Allowed Claim shall be made in accordance with the provision of the PLAN with respect to the Class of Creditors to which the holder of such an Allowed Claim belongs. However, interest, if any, on any funds reserved for a contested claim shall inure to the benefit of the holder of such an Allowed Claim.

<u>Avoidance Actions</u>. To the extent appropriate, the Debtor shall have the right to bring any and all avoidance actions, the same to be commenced with 90 days of the Confirmation date. Proceeds of all avoidance actions shall vest in the Debtor pursuant to 11 U.S.C. §1141.

## XVII. CONFIRMATION REQUEST

The Debtor request that the PLAN be confirmed in accordance with the provisions of §1129(a) and/or §1129(b) of the Code.

## XVIII. RETENTION OF JURISDICTION

Notwithstanding confirmation of this PLAN, the Court will retain jurisdiction for the following purposes, and each of them:

1. The Court will retain jurisdiction to determine the allowability and payment of any claim(s) upon any objection(s) thereto (or other appropriate proceedings) by the Debtor or by any other party in interest entitled to proceed in that manner. As part of such retained jurisdiction, the Court will continue to determine the allowability of Administrative Claims and any request(s) for payment(s) thereof, including professional fees and costs which are Administrative Claims.

2.  The Court will retain jurisdiction to determine any dispute(s) which may arise regarding the interpretation of any provision(s) of this PLAN.

3.  The Court will retain jurisdiction to facilitate the consummation of this PLAN by entering, consistent with the provisions of this PLAN, any further necessary or appropriate order(s) regarding the enforcement of this PLAN and any provision(s) thereof.

4.  The Court will retain jurisdiction to adjudicate any cause(s) of action or other proceeding(s) presently pending or otherwise referenced here or elsewhere in this PLAN, including, but not limited to, the adjudication of any and all "core proceedings" under 28 U.S.C. § 157(b), which may be pertinent to this Reorganization Case, and which the Debtor may deem it appropriate to initiate and prosecute in aid of its reorganization.

5.  The Court will retain jurisdiction to enter an appropriate final decree in this Reorganization Case.

6.  The Court will retain jurisdiction to enter an appropriate final decree, and any interim order(s), in any adversary proceedings which may be initiated during this Chapter 11 proceeding.

## XIX. FEASIBILITY OF DEBTOR'S PLAN

Debtor believes that the PLAN is feasible based upon the significant equity in the Property that exceeds $50,000,000, which sum, more or less, will be available to pay allowed creditors and equity holders under the Plan.

## XX. LIQUIDATION ANALYSIS

Debtor is proposing a liquidating PLAN where its assets will likely be liquidated by the Debtor.

The PLAN must provide that a nonconsenting impaired claimant or interest holder of a consenting class receive at least as much as would be available had the debtor filed a Chapter 7 petition instead.

In a Chapter 7 case, the general rule is that the debtor's assets are sold by a trustee. Unsecured creditors share in the proceeds of sale only after secured creditors and administrative claimants are paid. Certain unsecured creditors get paid before other unsecured creditors do.

Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the total amount of allowed claims. Equity holders get distributions only after all other allowed creditors get paid.

      A creditor would recover from the assets of the bankruptcy estate less under Chapter 7 than under Chapter 11 for two reasons. First, in this Chapter 11 case, Debtor's counsel is being paid on a contingency basis, but the fee will be deducted from the largest equity holder's distribution. The Debtor's largest members also have significant knowledge regarding the Las Vegas real estate market and are better equipped to obtain the highest value for the Property in a sale or refinance than a trustee would be. Second, in a Chapter 7 case a trustee is appointed and is entitled to compensation from the bankruptcy estate in an amount no more than 25% of the first $5,000 of all money disbursed, 10% on any amount over $5,000 but less than $1,000,000, 5% on all amounts over $1,000,000 but less than $3,000,000, and reasonable compensation not to exceed 3% on any amount over $3,000,000, thus diminishing monies available for payment to creditors and equity holders.

      Thus, if there were a liquidation of assets, Debtor believes that unsecured creditors and equity holders would not receive more on their claims than is being proposed in Debtor's Plan. Debtor's Plan proposes payment in full to allowed creditors, and said creditors would not receive more from a liquidation.

      Respectfully submitted this 25th day of March, 2020.

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE LLC

_/s/ Stephen R. Harris_
Attorney for Debtor

## VERIFICATION

I, Jeri Knudson, Manager of the Debtor, declare under penalty of perjury that I have read the foregoing DEBTOR'S DISCLOSURE STATEMENT, and that the contents contained therein are true and correct to the best of my knowledge, information and belief.

DATED this 26th day of March, 2020.

_____, Manager
Jeri Knudson, Manager
ESSEX REAL ESTATE PARTNERS, LLC