_____
Honorable Gary Spraker
United States Bankruptcy Judge



Entered on Docket
June 12, 2025
_____

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

* * * * * *

In re: )
)  Case No.: 19-51486-gs
)  Chapter 11
)
)  DATE: March 21, 2025
ESSEX REAL ESTATE PARTNERS, LLC, )  TIME: 9:30 a.m.
)
)
Debtor. )
)

**MEMORANDUM DECISION ON OBJECTIONS TO JOINT MOTION FOR ORDER DIRECTING DISTRIBUTION OF REMAINING PROCEEDS**
**[Anthony Pusateri and Ronald Fadel (ECF No. 745);**
**Tenrab Limited Partnership and Resource Investors Capital Holdings LLC (ECF No. 821);**
**and Judy Johnston (ECF No. 774)]**

George F. Holman, Sr., individually and in his capacity as Trustee of the MJH Irrevocable Trust, and Martha Jane Holman, individually and in her capacity as Trustee of the GFH Irrevocable Trust (collectively, Holmans), and Kirkland Development Associates LLC (Kirkland), have moved for an order directing the disbursing agent under the confirmed plan of liquidation to distribute the outstanding balance of funds held payable to equity interests in the debtor, Essex Real Estate Partners, LLC (Essex). *See* Joint Motion for Order Directing Distribution of Remaining Proceeds (Motion to Distribute). ECF No. 709. Objections were filed to the Motion to Distribute. ECF Nos. 720-724.

1

On December 20, 2024, the court held its initial hearing on the Motion to Distribute. At that hearing, the court stated its intention to grant the Motion to Distribute insofar as it requested a general authorization to make distributions. But the court also noted that significant additional information would be required before any distributions could be made. As a result of the hearing, the court entered its Order (1) Conditionally Approving Motion to Distribute Funds and (2) Continue Hearing, requiring the movants to provide a more detailed proposed distribution and providing interested parties the opportunity to object. ECF No. 732.

On January 24, 2025, counsel for the Holmans filed two alternative proposed Findings of Fact and Conclusions of Law detailing the proposed distribution to equity interest holders. ECF Nos. 735-36. Numerous parties filed responses and objections.[1] ECF Nos. 739-47. Anthony Pusateri and Ronald Fadel, equity holders of Preferred A units in Essex, have objected to the proposed Findings of Fact and Conclusions of Law. ECF No. 745.

The court heard oral arguments on the objections to the proposed Findings of Fact and Conclusions of Law on February 21, 2025, including those filed by Pusateri and Fadel. The court held a continued hearing on March 21, 2025. Additionally, Pusateri and Fadel have filed a motion to stay any distribution of the estate's remaining proceeds. The court has since denied that motion as premature. ECF No. 824. However, the arguments and evidence submitted as part of that briefing overlap with Pusateri's and Fadel's objections to the proposed distribution. Therefore, the court considers those arguments and evidence as part of this decision.

The court will address the specific objections made by Fadel and Pusateri within this order, leaving the other objections to be addressed in separate orders.

**Facts Relevant to Pusateri and Fadel Objection**

A.     **Capitalization of Essex and the events leading to bankruptcy.**

Essex was formed under Nevada law in 2007, to own and develop real property. Section 2.01 of the Essex operating agreement (Operating Agreement) addresses the capitalization of the entity and establishes Class A Common Units, Class B Non-Voting Common Units, and

---

[1] Concurrent with entry of this memorandum and order, the court is entering a separate order addressing several of these objections, leaving only the objections to Kirkland's asserted interest remaining.

Preferred Units. Adv. ECF No.[2] 530-1 at 6. Section 6.01(a) of the Operating Agreement details the distributions to unit holders. *Id.* at 13. The then-sole class of preferred unit holders (Preferred A) were to receive "a Preferred Return on the Unreturned Issue Price for each such Units at a rate of fifty percent (50%) per annum, cumulative to the extent not distributed in a given year…." *Id.* To the extent any monies were available for distributions they were to flow as follows:

(i) [Preferred A] Unit Holders, pro rata, in payment of the Preferred Return, in an amount equal to the excess, if any, of (x) the cumulative Preferred Return to the [Preferred A] Unit Holders over (y) the sum of all prior distributions to the Series A Preferred Unit Holders….

(ii) Next to the [Preferred A] Unit Holders, pro rata, to the extent of Unreturned Issue Price of each such [Preferred A] Unit Holder;

(iii) Then to the Common Unit Holders in proportion to their Common Unit Percentage Interests.

*Id.* at 13-14, § 6.01(b)(i)-(iii).

The court has previously described Essex's history in some detail in the Amended Memorandum Decision on Motions for Summary Judgment (Adv. ECF No. 607) entered in *Pioneer Funding Group III, LLC, et al. v. Essex Real Estate Partners, LLC, et al.*, Adv. Case No. 21-05041-gs. In summary, the project was started on the cusp of the Great Recession and did not go as expected. Though significantly undersecured, Essex's secured lenders never foreclosed. After a decade of no action, various persons realized that Nevada's Ancient Mortgage statute might apply to the benefit of Essex's unsecured creditors and owners.

Royal Union Trust was one of those persons. Marlon Steele, Jr., the administrative trustee for Royal Union Trust, testified that Vince Hesser came up with the idea to send Preferred A unit

---

[2] Citations to the docket for related adversary proceeding *Pioneer Funding Group III, LLC et al. v. Essex Real Estate Partners, LLC et al.*, Adv. Proc. No. 21-05041-gs, are designated "Adv. ECF No." throughout this decision. Many of the exhibits presented in the briefing of Mr. Pusateri's and Mr. Fadel's objections were addressed in the adversary proceeding as well. To the extent necessary, the court takes judicial notice of the pleadings on file in that adversary proceeding. *See Dunlap v. Neven*, 2014 WL 3000133, at *5 (D. Nev. June 30, 2014) (citing *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir.2006)) ("Courts routinely take judicial notice of their own court records."). Additionally, the court incorporates its Amended Memorandum Decision on Motions for Summary Judgment (Adv. ECF No. 607) entered in *Pioneer Funding Group III, LLC, et al. v. Essex Real Estate Partners, LLC, et al.,* Adv. Case No. 21-05041-gs as law of the case.

3

holders a solicitation letter. Adv. ECF No. 530-12 at 12, Transcript, p. 45:5-9. On November 22, 2019, Steele signed and sent a solicitation letter (Solicitation Letter) to the Preferred A unit holders. Adv. ECF Nos. 530-12 at 8, Transcript, p. 39:10-20; 530-13. The Solicitation Letter attached a "Member Ballot 11/22/19" (Ballot), which provided two options: elect to approve the filing of bankruptcy and cap Preferred A recovery at 20% of any recovery up to the payment of their initial investment, or sell the recipient's units. The Ballot also included representations, including that the signatories "understand that Royal Union can rely on your approval of this Ballot in connection with filing the bankruptcy, assignment of voting rights, [and] solely managing the actions taken or to be taken related to the case." Adv. ECF No. 530-13 at 4. Royal Union explained that it was in a position to acquire the majority of the managing Common A units and anticipated filing a bankruptcy to "negotiate with the lender," but it would do so only if it could rely on the Preferred A unit holders' agreement to cap their interests or sell those interests to Royal Union. *Id.* at 2.

Anthony and Linda Pusateri voted to agree to support a bankruptcy filing and cap their recovery to the return of their initial investment. Adv. ECF No. 530-11 at 22.

### B. The December amendments to the Essex Operating Agreement.

On December 17, 2019, George Holman signed a document entitled "Second Amendment of the Operating Agreement of Essex Real Estate Partners, LLC," as manager of Essex (December 17 Amendment). ECF No. 768 at 86. This amendment revised Section 6 of the Operating Agreement governing Debtor's profits, losses, and distributions from operations or the sale or refinancing of Debtor's property. First, the December 17 Amendment revised § 6.01(a) to insert a 20% cap on the preferred return to be paid to the Preferred A unit holders from any sale or refinancing. *Id.* at 85. The December 17 Amendment also altered the distribution provisions under § 6.01(b)(i) to reflect the cap on distributions to Preferred A members under revised § 6.01(a), and to eliminate § 6.01(b)(ii) and its pro rata distributions to Preferred A unit holders "to the extent of Unreturned Issue Price of each such" Preferred A member. *Id.* at 85-86. Importantly, § 6.01(b)(iii), which provided that distributions after payment to Preferred A would go to Common unit holders "in proportion to their Common Unit Percentage Interests," was not

4

revised. *Id.* The December 17 Amendment attached signatures of Preferred A unit holders DJIP, LLC and the Pusateris. Steele also signed the document on behalf of Royal Union Trust as successor in interest to Two Musketeers Revocable Trust Dated December 19, 2005 (Two Musketeers). *Id.* at 87-90.

Another amendment to the Operating Agreement was adopted effective December 24, 2019 (December 24 Amendment) that also capped the distribution to Preferred A members. ECF No. 774 at 6-14. Unlike the prior amendment, the December 24 Amendment created a new class of 150 Preferred B units. *Id.* at 6-7. It further amended § 6.01(a) to establish that the Preferred Return would accrue at 50% per annum based on "the total of all combined Preferred Unit Capital Contributions." *Id.* at 7. However, § 6.01(b)(i) was also restated and amended to split any distribution first to 20% to "the Series A Preferred Unit Holders, pro rata, until the Series A Preferred Unit Holders receive an amount equal to their Capital Contributions." *Id*. The remaining 80% was to be distributed to the newly created Preferred B members. *Id.* Sections 6.01(b)(ii) –(iii) then provided that, after the distributions were made under § 6.01(b)(i), Preferred B unit holders would receive a distribution equal to "the total accrued Preferred Return" and then distributions would flow to the Common unit holders. *Id.* The December 24 Amendment also revised §§ 8.04(c) and (d) governing distribution of proceeds in the event of liquidation to provide that such a distribution would be consistent with § 6.01(b). *Id.*

Under § 11.04 of the Operating Agreement, amendments to §§ 2.01 and 8.04 required "the consent of the holders of at least a Majority-in-Interest of the [Common A] Membership Voting Interests." Adv. ECF No. 530-1 at 33. Amendments to §§ 2.01 and 8.04, as well as 6.01, also required the consent of "Members holding a majority of the [Preferred A] Units." *Id.* The December 24 Amendment was accompanied by signature pages of: Royal Union Trust as successor to Preferred A members Robert and Breese Glennon, Valner and Dawn Johnson, and Two Musketeers; Ronald Fadel; the Pusateris; Judy Johnston; DJIP LLC; and finally, Royal Essex as the Preferred B unit holder. ECF No. 774 at 9-14. The executed signature pages are not dated. Pusateri and Fadel do not dispute that they signed the December 24 Amendment.

5

### C. The bankruptcy proceedings.

On December 27, 2019, Essex filed its chapter 11 bankruptcy petition. ECF No. 1. The petition included a list of equity interests, including the Pusateris and Fadel as equity owners. *Id*. at 6-7.

On November 5, 2020, the bankruptcy court approved the sale of Essex's real property. ECF No. 240. Five days later, the court approved Essex's Disclosure Statement to begin the confirmation process. ECF No. 252.

On December 4, 2020, Essex filed its Ballot Summary for the Second Amended Plan of Reorganization (Second Amended Plan). ECF No. 324. The Ballot Summary includes ballots accepting the proposed plan from both Fadel and the Pusateris. *Id.* Both Fadel and the Pusateris also filed declarations in support of confirmation of the Second Amended Plan. ECF Nos. 427 (Pusateri Declaration); 428 (Fadel Declaration). These declarations reaffirmed their November 2019 ballots given to Royal Union as well as the December 24 Amendment, and stated their opposition to the appointment of a trustee. *Id.*

On January 22, 2021, the court confirmed Essex's revised Second Amended Plan (Confirmation Order) and the sale of debtor's real property. ECF Nos. 474 (sale) and 475 (confirmation of plan). The Confirmation Order revised the provision addressing Essex's equity interests and appointed William Noall as the "Remaining Distribution Agent" to hold the balance of proceeds from the sale of Essex's real estate after payments of all creditors. The Confirmation Order anticipated that any distribution to equity owners would only be made upon entry of an appropriate distribution order after the determination of any disputed interest "in an appropriate forum separately from confirmation of the Plan." ECF No. 475 at 3:7-26.

### D. Payment and release agreements.

On March 26, 2021, the Pusateris signed their "Payment and Release Agreement" in furtherance of their 2019 Ballot that authorized Essex to file for bankruptcy and their vote to accept the proposed plan limiting their recovery to the return of their investment. ECF No. 608 at 17-19. Mr. Fadel signed his Payment and Release Agreement the same day. *Id.* at 14-16. The Payment and Release Agreements recited that the December 24 Amendment was valid and

binding and that the "Investor agreed to accept 20% of the net cash recovery, up to a maximum of Investor's total principal investment (after payment of any and all expenses and costs incurred by the Parties and affiliates …." *Id* at 15 and 18. The respective Payment and Release Agreements stated that the Pusateris would receive $147,869.00 and Mr. Fadel would receive $36,967.00 "as full and final payment distribution due under the terms and conditions of the Operating Agreement, approved Essex bankruptcy plan … and agreements between the Parties." *Id.*

### E. Prior efforts to distribute the remaining sale proceeds.

Shortly after confirmation of Essex's plan, on February 10, 2021, Royal Essex filed its complaint against Further South and Joseph Genovese, Nevada District Court Case No. A-21-829274, in the Nevada district court before the Hon. Nancy Allf. This began a litany of filings of separate lawsuits for damages or determination of equity interests in Essex. *See generally* Amended Memorandum Decision on Motions for Summary Judgment, Adv. ECF No. 606 at 36-44.

Equity interest holders Pioneer Funding Group III, LLC and Pioneer Funding Group IV, LLC (together, Pioneer) and Further South, LLC (Further South) filed their adversary proceeding against Essex, Royal Union Trust and Royal Essex LLC (the Royal Entities), the Holmans, and others on February 24, 2021, asserting claims for damages as well as equitable subordination and disallowance. Adv. ECF No. 1. The court issued an order to show cause why it should not abstain from hearing the claims asserted in the adversary proceeding pursuant to 28 U.S.C. § 1334(c)(1). Adv. ECF No. 35. On July 12, 2021, the court entered its order partially abstaining from hearing the adversary proceeding. Adv. ECF No. 66 (Abstention Order). Pursuant to the Abstention Order, the court elected to abstain from hearing all but the cause of action for equitable subordination and, to the extent it constituted a cause of action, equitable disallowance. The court entered an order dismissing the claim for equitable disallowance, and subsequently entered its memorandum and order resolving the subordination claim.

On August 6, 2021, Royal Essex filed its Motion for Order Authorizing and Directing the Remaining Proceeds Distribution Agent to Release Funds. ECF No. 588. Royal Essex reasoned

that because Common unit holders would recover none of the Essex real property sale proceeds under either the Operating Agreement or the December 24 Amendment, there was no basis to further delay distributing the net sale proceeds to the Preferred A and Preferred B unit holders. Mr. Noall, the Remaining Proceeds Distribution Agent, objected to the distribution motion. ECF No. 604. The court denied Royal Essex's distribution motion. ECF No. 623 at 47-48, Transcript, pp. 47:19-48:9.

Almost exactly one year later, on August 11, 2022, Mr. Santacroce similarly filed a Motion For Order Authorizing And Directing Remaining Proceeds Distribution Agent To Release Undisputed Funds on behalf of Mr. Pusateri, Inspirada Investment Group, Tenrab Limited Partnership, and Resource Investors Capital Holding, LLC (Resource Investors) (First Pusateri Motion). ECF No. 632. The First Pusateri Motion sought an order authorizing the Distribution Agent to distribute the balance of funds held under the confirmed plan of reorganization. That motion recognized the effect and enforceability of the December 24 Amendment:

> On December 24, 2019, the Operating Agreement was amended to revise Sections 2.01, 6.01 and 8.04… The Second Amendment amended Section 6.01(b)(i-iii) of the Operating Agreement by breaking down and splitting the already accrued Preferred Return. Under the amendment, existing Series A Preferred Unit holders agreed to receive 20% of any money available for distributions by Debtor up to their original investment. The remaining 80% of the Preferred Return is paid to new Series B Preferred Units up to the total required Preferred Return. The creation of the new Series B Preferred Units was expressly authorized by §4.02(a)(iv) of the Operating Agreement and 86.296. The Second Amendment did not change the original Operating Agreement provisions providing that Common Units only receive a distribution after the total Preferred Return was distributed to Preferred Unit holders.

ECF No. 632 at 6.

The First Pusateri Motion specifically requested an allocation from the remaining proceeds to pay the Preferred A unit holders their initial investments. Through his motion, Mr. Pusateri sought to recover the $147,869.00 he originally invested in Essex. *Id.* at 12. The First Pusateri Motion also allocated $36,967.00 to pay Fadel his original investment. *Id.* at 13. The motion noted that the capped amounts sought were "not subject of any debate or any current or

foreseeable claim." *Id.* at 3. It was accompanied by a request for a hearing on shortened notice, which the bankruptcy court denied. ECF No. 644.

Rather than setting a hearing on regular notice, on December 16, 2022, Pusateri and Inspirada Investment Group, LLC filed a substantially similar motion to compel payment of $147,869.00 to Pusateri and $36,967.00 to Fadel on account of their original investments pursuant to the December 24 Amendment (the Second Pusateri Motion). ECF No. 658. The Second Pusateri Motion, however, was not filed by Mr. Santacroce but by different counsel. The bankruptcy court denied the Second Pusateri Motion after full briefing and a hearing. ECF No. 688.

### F. The adversary proceeding.

As noted above, on February 24, 2021, Pioneer and Further South filed their adversary action against Royal Essex and other defendants asserting multiple causes of action for damages and equitable relief. Kirkland filed its motion to intervene as a plaintiff on March 19, 2021. Adv. ECF No. 17. Kirkland's intervention motion was granted on September 30, 2021. Adv. ECF No. 82.

On May 9, 2022, the court entered its order granting Two Musketeers' motion to intervene as a plaintiff. Adv. ECF No. 176.

The parties to the adversary proceeding agreed on a scheduling order and amended scheduling order to close discovery on October 10, 2023. The parties further extended the deadline for dispositive motions until November 13, 2023, and set the case to begin trial on January 17, 2024. The parties began filing motions for summary judgment on April 28, 2023. Cross-motions soon followed.

On October 26, 2023, Mr. Santacroce, representing Mr. Pusateri, Inspirada Investment Group, Tenrab Limited Partnership, and Resource, filed a Motion to Intervene in the adversary proceeding. Adv. ECF No. 479. After a hearing on November 9, 2023, the court entered its Order Denying Motion To Intervene. Adv. ECF No. 518.

On August 30, 2024, the court entered its memorandum decision granting in part and denying in part the cross-motions for summary judgment on the claims for equitable

subordination. Adv. ECF No. 603. The court subsequently amended its memorandum decision (Adv. ECF No. 607) and denied Further South's motion for reconsideration. Adv. ECF No. 753. The court's decision is currently pending appeal.

### G. The current Motion to Distribute.

A couple months after the court entered its memorandum decision in the adversary proceeding, the Holmans and Kirkland moved for an order directing the disbursing agent under the confirmed plan of liquidation to distribute the outstanding balance of funds held payable to equity interests. *See* Motion to Distribute, ECF No. 709. Objections to the Motion to Distribute were timely filed by Azteca Real Estate Partners, LLC, Danon Blea, Breese Glennon, Robert Glennon, Dawn Johnson, Valner Johnson, Pioneer, and Two Musketeers (ECF No. 720); Royal Essex LLC, Marlon Steele, Jr., as Trustee of the Royal Union Trust, and Royal Union Properties, LLC (ECF No. 710); and Judy Johnston (ECF No. 722). William M. Noall, the Remaining Proceeds Distribution Agent, also filed a response. ECF No. 723.

On December 20, 2024, the court held its initial hearing on the Motion to Distribute. At that hearing, the court stated its intention to grant the Motion, adding that significant additional information would be required before distributions could be made. As a result of the hearing, the court entered its Order (1) Conditionally Approving Motion to Distribute Funds and (2) Continue Hearing (ECF No. 732), requiring the movants to provide a more detailed proposed distribution by January 24, 2025, and providing interested parties the opportunity to object by February 7, 2025.

On January 24, 2025, counsel for the Holmans filed two alternative proposed Findings of Fact and Conclusions of Law detailing the proposed distribution to equity interest holders. Numerous parties filed responses and objections. ECF Nos. 735-36. Both proposals provided for payment to Pusateri and Fadel in the amount of their original investments, together with the other Preferred A unit holders. The movants have since withdrawn the alternative proposed Findings of Fact and Conclusions of Law, and have filed an amended proposed Findings of Fact and Conclusions of Law. ECF No. 820. The current amended proposed Findings of Fact and Conclusions of Law does not alter or affect Mr. Pusateri's or Mr. Fadel's pending objections.

Mr. Pusateri and Mr. Fadel did not object to the original Motion to Distribute, or appear at the initial December 20, 2024 hearing thereon. They did, however, file their Joint Objection To [Proposed] Findings Of Fact, Conclusions of Law and Order Granting Motion Directing Distribution of Remaining Proceeds (Joint Objection). ECF No. 745.  The Joint Objection argues that the proposals were fatally flawed because:

> (1) They contradict rulings made by the Nevada Supreme Court in a final and binding order on state law matters germane to distribution.
>
> (2) They violate the bankruptcy court's Confirmation Order and Order of Abstention mandating the effectuation of this distribution in a manner comporting with Nevada state law as dictated by a final unappealable order.
>
> (3) They violate the Essex Operating Agreement, the relevant operational terms of which the Nevada Supreme Court has clarified in the above-mentioned ruling, the only final and unappealable order now in effect.

*Id.* at 1-2.

Several days later, on February 11, 2025, Mr. Santacroce filed his own declaration in support of the Joint Objection. ECF No. 752.

The court heard oral arguments on all objections to the proposed Findings of Fact and Conclusions of Law on February 21, 2025, and continued the hearing to March 21, 2025, to permit the parties to further explore settlement of the disputes surrounding distribution of the remaining proceeds.

The day before the continued hearing on March 21, 2025, Mr. Santacroce filed an unauthorized Supplement in Support of Objection to Proposed Distribution Plans asserting that he had newly obtained evidence establishing that the December 17 Amendment to the debtor's Operating Agreement was unauthorized. ECF No. 768. Attached to the supplement was an electronically signed declaration from David Johnson stating that he is a partner in the entity serving as manager for Resource Investors, a Preferred A unit holder. Mr. Johnson states that he has recently become aware that an amendment signed by Mr. Holman may have lacked the required consent of Essex's members. He also states that he was recently informed that Kamela Nielson may have signed "documentation" as a representative of Resource Investors. The

11

declaration states that Kamela Nielson, signatory to the December 17 Amendment on behalf of Resource Investors, was not authorized to represent his entity or Resource Investors. *Id.* at 22. Attached to Mr. Johnson's declaration is an undated version of the December 17 Amendment signed by Mr. Holman and including a signature page in the name of Resource Investors that bears the electronic signature of Kamela Nielson. *Id.* at 23-25.

The unauthorized supplement also includes an electronically signed declaration from Kamela Nielson dated October 26, *2023*, acknowledging that Inspirada Investment Group LLC, a Preferred A unit holder in which she and her husband were members, had approved and signed the December 24 Amendment, but not the December 17 Amendment. *Id.* at 28-29. She further stated that her signature on any other amendment than the December 24 Amendment was "a misuse of my explicit approval and authorization." *Id.* at 28. Also, due to concerns that false assertions were being made, she states she retained Mr. Santacroce as well. *Id.* at 29.

The court heard oral arguments on the proposed Findings of Fact and Conclusions of Law, and the associated objections at the March 21, 2025 hearing. At the conclusion of the hearing, the court scheduled a status conference for April 18, 2025, which status conference was continued to May 22, 2025. On May 20, 2025, two days before the court's May 22, 2025 status conference on the Motion to Distribute, Preferred A unit holders Tenrab Limited Partnership (Tenrab) and Resource Investors filed their joint Objection to Holman Parties' Proposed Distribution of Remaining Proceeds (ECF No. 821). The objection did not state with any specificity whether Tenrab and Resource Investors object to the Motion to Distribute or to the Proposed Findings of Fact and Conclusions of Law, or both. Regardless, it was filed too late for consideration.[3]

---

[3] The Motion to Distribute was conditionally approved on January 15, 2025. ECF No. 732. That order set a deadline of February 7, 2025, for objections to the Proposed Findings of Fact and Conclusions of Law, and was served electronically on Mr. Santacroce, who is counsel for Tenrab and Resource Investors. Although supplemental briefing and other documents related to the Proposed Findings of Fact and Conclusions of Law have been filed at the court's request after the deadline for oppositions expired, the court will not consider the joint opposition filed without court authorization by Tenrab and Resource Investors over three months after the opposition deadline passed.

H.     **The motion to stay distribution.**

On April 7, 2025, Mr. Pusateri and Mr. Fadel filed their joint Motion For Order Staying the Distribution of Remaining Proceeds Pending Resolution of Legal Challenges to Void December 17 Amendment (Motion to Stay). ECF No. 782. The Motion to Stay sought an order under Rule 8007(a) of the Federal Rules of Bankruptcy Procedure staying the distribution of the remaining proceeds pending resolution of legal challenges to the December 17 Amendment to the Operating Agreement. Mr. Holman opposed the motion to stay. ECF No. 805.  Further South joined in the opposition. ECF No. 806. As noted above, the court denied the motion as premature. ECF No. 824.

I.     **The continuing state court litigation and arbitration request involving Pusateri and Fadel.**

Mr. Pusateri, again acting through Mr. Santacroce, sued George Holman and Two Musketeers in the Eighth Judicial District Court, Clark County, in 2024. *Pusateri v. Las Vegas Development Associates, LLC, et al.,* Case No. A-24-888762-B. Mr. Pusateri asserted claims against Two Musketeers for declaratory relief, fraud, violation of Nevada Securities Laws, breach of contract, unjust enrichment, breach of fiduciary duty, fraudulent inducement, negligent misrepresentation, deceptive trade practices, and conspiracy to commit fraud. ECF No. 755 at 52. The Hon. Joe Hardy dismissed Mr. Pusateri's complaint with prejudice for a variety of reasons. Relevant to the current issues before the court, Judge Hardy held that Mr. Pusateri had released any claims by executing his Payment and Release Agreement dated March 26, 2021, and was barred by his prior judicial admissions from challenging his proposed distribution. As a result, the court recognized that Mr. Pusateri could assert no damages against the Mr. Holman or Two Musketeers.

Sometime in 2025, Mr. Santacroce filed another action for Mr. Pusateri and Mr. Fadel, suing Essex and others in *Pusateri, et al. v. Essex Real Estate Partners, LLC, et al.,* Case No. 25-912201. The exact nature of this action is unclear. However, on March 20, 2025, Mr. Santacroce voluntarily dismissed this action without prejudice. The Notice of Voluntary Dismissal stated:

13

"Plaintiffs have elected to invoke their right to arbitrate their claims as allowed in the Operating Agreement of Essex Real Estate Partners, LLC." ECF No. 805-6.

Shortly before dismissing the state court action, Mr. Santacroce sent an Arbitration Notice and Demand to the unit holders of Essex. ECF No. 805-3. George Holman responded, denying arbitration was applicable. ECF No. 805-4.

## Analysis

### A.     The validity of the December 17, 2019 Amendment to Essex's Operating Agreement is immaterial to the proposed distribution.

The above detailed factual discussion demonstrates that Mr. Pusateri has been actively involved in Essex's financial resurrection since Royal Essex's first solicitation of interest of the Preferred A unit holders in November 2019. Mr. Fadel's first activity appears to have begun with the signing of the December 24 Amendment, which Pusateri also signed. Both documents committed them to capping their recovery of any proceeds payable on account of their Preferred A interests to the amount of their original investments. Since then, both Mr. Pusateri and Mr. Fadel actively supported Essex's subsequent bankruptcy. Both submitted declarations approving the December 24 Amendment and Royal Essex's Preferred B membership in Essex, and also acknowledged the cap on their distribution.

Both also confirmed their agreement to the capped distribution when they executed the March 26, 2021, Payment and Release Agreements with Essex and Royal Essex. The Payment and Release Agreements specified that the Pusateris would receive $147,869 on account of their Preferred A interest in Essex. Adv. ECF No. 568 at 870. Mr. Fadel's agreement specified that he would receive $36,967 on account of his Preferred A interest in Essex. *Id.* at 864. Both Mr. Pusateri and Mr. Fadel then supported Royal Essex's motion to disburse these amounts to them from the remaining proceeds. After the court denied Royal Essex's motion to disburse the remaining proceeds, Mr. Fadel and Mr. Pusateri filed not one, but two of their own motions to compel payment to them in these exact amounts.

The proposed Findings of Fact and Conclusions of Law provide payments to Mr. Pusateri and Mr. Fadel in the exact amounts they have sought since the commencement of the bankruptcy

proceedings. They now object to the same distribution they have sought based on an argument that the December 17 Amendment may be invalid. This argument is immaterial to their distribution. They have admitted that they voluntarily executed the December 24 Amendment which caps their distributions at the amount of their original investments - the same amounts Mr. Pusateri and Mr. Fadel have sought for years and the amount proposed to be distributed to them.

Mr. Pusateri and Mr. Fadel have not provided any factual or legal analysis to establish the consequence of invalidating the December 17 Amendment. The later December 24 Amendment recast the obligation to the Preferred A members and limited that distribution to repayment of the original investments. On that basis, Essex was placed into bankruptcy, the real property was sold, the settlement with the creditors was reached, and a plan was confirmed.

Furthermore, on January 26, 2022, the Hon. Nancy Allf of the Nevada district court entered her Order Granting Plaintiff's Motion for Summary Judgment in *Royal Essex, LLC v. Further South, LLC*, Case No. A-21-829274-B. Adv. ECF No. 465 at 44-48. Pertinent to the current Motion to Distribute, the court found that "[t]he preferred A members agreed to split their distributions with the preferred B member (Plaintiff) in accordance with the Second Amendment to the Operating Agreement, and executed Payment and Release Forms." *Id*. at ¶ 15. The court included a distribution schedule as to the Preferred A members. According to that decision, Mr. Pusateri and Mr. Fadel were entitled to $147,869 and $36,967, respectively, on account of their interests. *Id.* at ¶ 16. The Nevada Supreme Court has affirmed Judge Allf's decision.

Royal Essex was scheduled to receive $16,048,154 under Judge Allf's decision applying the December 24 Amendment. *Id.* Subsequent to Judge Allf's decision, however, the Hon. Mark Denton issued his ruling in *Royal Essex, LLC, et al. v. Azteca Real Estate Partners, LLC et al.,* Case No. A-21-829278-B, in which the court ruled that Royal Essex's membership interest in Essex was void. *Id.* at 54. That decision is currently on appeal to the Nevada Supreme Court. This court's decision in Pioneer's and Further South's adversary proceeding to equitably subordinate any interest held by Royal Essex was entered subsequent to both Judge Allf's and Judge Denton's decisions.

The court suspects that Mr. Pusateri and Mr. Fadel would simply prefer that the monies that were to be paid to Royal Essex should go to them because they are Preferred A members. But they have provided no argument or discussion, factual or legal, that suggests such a result is proper.[4] The Preferred A members capped their recovery. The proposed Findings of Fact and Conclusions of Law apply the revised, capped distribution to Preferred A members provided by the December 24 Amendment and otherwise agreed to by Mr. Pusateri and Mr. Fadel. In this regard, the earlier December 17 Amendment is wholly irrelevant. Despite their ongoing filings beyond the objection deadline, Mr. Pusateri and Mr. Fadel have provided nothing to suggest that the December 17 Amendment affects the proposed distribution. As such, their argument regarding the December 17 Amendment fails to state a valid objection to either the proposed Findings of Fact and Conclusions of Law or to the proposed distribution.[5]

### B.    The Confirmation Order does not prohibit the proposed distribution.

Mr. Pusateri and Mr. Fadel also argue that "[d]istribution of the Remaining Proceeds is conferred on the discretion of the Remaining Proceeds Distribution Agent." ECF No. 745 at 3. They base this argument on the language in the Confirmation Order that: "The Distribution

---

[4] Judy Johnston, another Preferred A unit holder, filed a Supplement to Opposition of Certain Current and Former Interest Holders to Motion for Order Directing Distribution of Remaining Proceeds. ECF No. 720. This Supplement addressed the absence of any distribution to Common B members. That issue has subsequently been resolved by agreement of the parties. Johnston did file a later Supplement Clarifying Relevance of December 17 Amendment. ECF No. 774. In her second Supplement, Johnston states "under the December 24, 2019 version, the Preferred Return would be calculated at a rate of 50% per annum and distributions would be made on an 20/80 split between the Series A Preferred Unit Holders and the Series B Preferred Unit Holders, *without a cap as to the distributions to the Series A Preferred Unit Holders*." ECF No. 774 at 3 (emphasis added). But the 20/80 split in the December 24 Amendment expressly limits the 20% to the Preferred A members: "First, twenty percent (20%) to the Series A Preferred Unit Holders, pro rata, *until the Series A Preferred Unit Holders receive an amount equal to their Capital Contributions*." Adv. ECF No. 568 at 109 (emphasis added). This is consistent with the motion to disburse filed by Royal Essex in the first instance, as well as the two motions filed by Mr. Pusateri. And it is consistent with the distribution set forth in Judge Allf's distribution schedule to the Preferred A members.

[5] Whether under the doctrine of issue preclusion or the independent application of judicial estoppel, the court agrees with Judge Hardy's assessment of Mr. Pusateri's actions since 2019. Though Mr. Fadel's actions differ slightly, the substantive effect of his actions is the same. Both are bound by their actions and agreements capping their distribution from the remaining sale proceeds of Essex's real property. *See* ECF No. 774 (signed December 24 Amendment); 608 at 14-16 (Fadel's Payment and Release Agreement); 608 at 17-19 (Pusateris' Payment and Release Agreement). For the reasons stated above, the court finds that Mr. Pusateri and Mr. Fadel have not demonstrated that any dispute concerning the December 17 Amendment presents a material objection to distribution. However, their prior actions and agreements preclude them from raising any such arguments to alter their distribution either under the doctrine of issue preclusion, or if not applicable, under judicial estoppel based on the record presented.

16

Order shall be in the form reasonably acceptable to the Remaining Proceeds Distribution Agent and explicitly describe to whom, at what address and what amounts all of the Remaining Proceeds are to be distributed." ECF No. 475 at 3. This language confirms only that the court's order approving any distribution must be in a form acceptable to the Distribution Agent so that he has all the necessary information to make the approved distribution.[6]

Nothing in the Confirmation Order vests authority in the Distribution Agent to decide the underlying distribution.[7] Indeed, the Distribution Agent has previously disagreed with Mr. Pusateri's and Mr. Fadel's reading of the Confirmation Order:

> It is not the role of the Distribution Agent to support or oppose any equity security holder's position with respect to who owns Debtor's equity securities and in what quantities and the priority of those interests. That determination is for the courts. However, Debtor's confirmed Plan calls for this Court to enter a Distribution Order. To argue otherwise, or to seek vesting of funds in another forum is a collateral attack on a final order of the Court, the Plan Confirmation Order.

ECF No. 747 at 2.

The Confirmation Order anticipated that the rights of the putative equity owners, and the ultimate distribution, would be "determined in an appropriate forum separately from confirmation of the plan." *Id.* That has now happened sufficiently to permit the proposed distribution to proceed.

    **C.**    **The Abstention Order does not prohibit the proposed distribution.**

Mr. Pusateri and Mr. Fadel raise this court's prior Abstention Order in opposition to the proposed Findings of Fact and Conclusions of Law. They argue "that resolution of litigation over the rights and composition of Class 3 interest holders was a necessary prerequisite to entry of a Distribution Order." ECF No. 745 at 4. However, the rights and composition of the Class 3

---

[6] The Distribution Agent previously provided his comments to the Proposed Findings of Fact and Conclusions of Law. ECF No. 747. No party has objected to those revisions, which are not directed at the substance of the proposed distribution to the parties identified in the Proposed Findings of Fact and Conclusions of Law.

[7] The first sentence in the revised Plan section titled "Class 3 [Equity Interests of Debtor"], prior to the one quoted by Mr. Pusateri and Mr. Fadel, clarifies the distribution process: "After payment of the Class 1, Class 2 and Class 4 allowed Creditors' claims as set forth in the Plan, the sale proceeds remaining in the Debtor's estate (the 'Remaining Proceeds') shall be held by William Noall, Esq., (the 'Remaining Proceeds Distribution Agent') attorney for Proponent of the Plan in an interest bearing trust/deposit account established by him or his law firm at Nevada State Bank pending further order of the Court setting forth how the Remaining Proceeds shall be distributed (the 'Distribution Order')." ECF No. 475 at 3.

interest holders have been determined. Indeed, they fail to identify any pending matter, including any appeal, that would affect **their** proposed distribution.

Mr. Pusateri and Mr. Fadel seek to delay any distribution until every possible litigation is exhausted through appeal. The court has explained previously that it believes all relevant decisions have now been made in the numerous related cases in the Nevada courts and this court. Several of these decisions are now on appeal. However, the appeals do not affect the finality of those decisions. *Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988) ("The established rule in the federal courts is that a final judgment retains all of its res judicata consequences pending decision of the appeal.") [internal quotation omitted]. Rather, those decisions are operative and enforceable absent a stay pending appeal. *In re RW Meridian LLC*, 2017 WL 6045220, at *3 (B.A.P. 9th Cir. Dec. 6, 2017) (citing *Bennett v. Gemmill (In re Combined Metals Reduction Co.)*, 557 F.2d 179, 190 (9th Cir. 1977)) ("While an appeal is pending, federal judgments and orders are fully effective and enforceable absent a stay pending appeal."). No party in interest has advised this court of *any* stay pending appeal. All parties in interest have had considerable notice and opportunity to obtain a stay pending a specific appeal. The pending Motion to Disburse was filed on November 11, 2024. ECF No. 709. And the court entered its Order (1) Conditionally Approving Motion to Distribute Funds and (2) Continuing Hearing on January 15, 2025. ECF No. 732. Yet, no stay pending any appeal has been entered to stay the distribution process. Accordingly, the pending appeals do not affect the court's consideration of the Motion to Distribute.

        D.        The *Royal Essex v. Further South* decision.

Mr. Pusateri and Mr. Fadel continue the argument raised by Royal Essex that Judge Allf's decision in *Royal Essex v. Further South*, Nevada District Court Case No. A-21-829274, precludes any distribution to Further South. The court has previously addressed this argument in the above discussion, as well as in the Amended Memorandum Decision on Motions for Summary Judgment entered in *Pioneer Funding Group III, LLC, et al. v. Essex Real Estate Partners, LLC, et al.*, Adv. Case No. 21-05041. The court incorporates those discussions by reference.

In short, the court is not contravening Judge Allf's contractual analysis. However, at a minimum, Judge Allf's decision did not preclude this court's consideration of equitable subordination in the adversary proceeding. Mr. Pusateri and Mr. Fadel have not offered any argument or reason to the contrary and the proposed distribution to them is consistent with her rulings.

E.      **Recent litigation and the Arbitration Demand.**

In their Supplement filed on March 20, 2025, Mr. Pusateri and Mr. Fadel raise their demand for arbitration for the first time. The Supplement refers to a pending arbitration supported by Resource Investors and Inspirada Investment Group and commenced by Mr. Pusateri and Mr. Fadel "to ensure lawful, proper and question distribution in accordance with the valid Essex Operating Agreement." ECF No. 768 at 4. However, there is no evidence that any arbitration has been actually opened, or any arbitrators appointed. Rather, *eight* days before he filed the Supplement, Mr. Santacroce sent an Arbitration Notice and Demand to Essex's members and managers giving "notice of their right to submit the dispute concerning an alleged 'Fictitious Amendment' of the Operating Agreement to arbitration." ECF No. 805-3. The next day counsel for the Holmans responded to Mr. Santacroce that the arbitration demand was "futile," because § 11.02 of the Operating Agreement vested exclusive jurisdiction over disputes over amendments to the Operating Agreement in the state and federal courts in Las Vegas, Nevada. ECF No. 805-5. Mr. Santacroce disputed the Holmans' reading of the Operating Agreement in an email dated March 17, 2025. ECF No. 805-6.

The dispute to be arbitrated remains the validity of the December 17 Amendment. For the reasons discussed above this issue does not affect the proposed distribution. Moreover, Mr. Pusateri, Mr. Fadel, and Mr. Santacroce have had almost six years to litigate the validity of the December 17 Amendment. Instead, they waited until eight days before the continued hearing on the Motion to Disburse to raise the issue.  And still, they fail to explain how invalidating the December 17 Amendment will affect the distribution in the very same amounts they have advocated for several years – and which Judge Allf ordered.

19

Neither the validity of the December 17 Amendment, nor the prospect of an arbitration on that issue, presents a valid objection to either of the proposed Findings of Fact and Conclusions of Law addressing the proposed distribution. That Mr. Pusateri and Mr. Fadel have filed, or may file, some proceeding in the future is insufficient to further delay the proposed distribution.

## Conclusion

For the reasons stated above, the court concludes and finds that Mr. Pusateri and Mr. Fadel have failed to state a valid objection to the proposed distribution as set forth in the movants' Proposed Findings of Fact and Conclusions of Law. Accordingly, the court overrules those objections and shall enter a separate order consistent with this decision.

\* \* \* \* \*

Copy sent to all parties and/or their counsel via CM/ECF Electronic Notice.

###